■ A.N.R. Investment Company Ltd. et al., Respondents-Appellants, v HSBC Private Bank, Appellant-Respondent. [25 NYS3d 78]—

Orders, Supreme Court, New York County (Jeffrey K. Oing, J.), entered on or about July 1, 2015 and July 13, 2015, which, to the extent appealed from, denied so much of defendant's (HSBC) motion as sought to dismiss the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, and granted so much of the motion as sought to dismiss the causes of action for breach of fiduciary duty, negligent misrepresentation, fraud, constructive fraud, and violation of General Business Law § 349 (a), unanimously

modified, on the law, to grant the motion as to the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint.

In 2003, plaintiffs opened private banking accounts with defendant HSBC. Plaintiffs used their HSBC accounts to invest hundreds of thousands of dollars in shares of Fairfield Sentry Limited (Sentry), an off-shore Madoff "feeder fund"—a hedge fund that invested nearly all of its assets with Bernard L. Madoff Investment Securities LLC. Plaintiffs became beneficial owners of the Sentry shares and thus came to have exclusive rights to any investment returns, interests, benefits and liabilities associated with owning Sentry shares. HSBC, for its part, became the nominee shareholder of plaintiffs' Sentry shares.

Shortly after Madoff's arrest in December 2008, Sentry was placed into liquidation because all of its assets were held with Madoff and had been rendered worthless. Thereafter, in September 2010, the Sentry liquidators filed a series of lawsuits to recover redemption payments made by Sentry to all of its investors, including those made to plaintiffs, in the years before Sentry's insolvency. When Sentry initiated litigation against HSBC as the nominee shareholder of the Sentry shares for the beneficial owners of accounts held at HSBC, HSBC froze the at-risk funds and denied plaintiffs' request to withdraw their accounts.

Plaintiffs then commenced this action alleging breach of contract and breach of fiduciary duty, among other claims. Plaintiffs essentially allege that HSBC did not have the right to freeze plaintiffs' assets, and they seek a court order directing HSBC to release all assets forthwith. Supreme Court granted HSBC's motion to dismiss all claims, except the breach of contract and breach of the covenant of good faith and fair dealing claims. We now find that those remaining claims should have been dismissed as well.

The cause of action for breach of contract must be dismissed because the terms and conditions that plaintiffs signed when they opened their accounts at HSBC explicitly authorized the conduct of which plaintiffs complain in this action. For instance, section 10 gives HSBC "sole discretion" that, if any instruction might expose it to liability, it may require satisfactory security against loss (here, the instruction to transfer the accounts). Sections 12 and 13 provide additional authorization for HSBC to freeze plaintiffs' accounts by giving HSBC a

"continuing lien upon and security interest in all Collateral," including the account, as security for plaintiffs' obligations to the bank, whether these obligations are "matured or not matured." The terms and conditions specifically recognized that property may become subject to legal process, and that HSBC was "irrevocably authorized" to "block or withhold" any or all collateral "without notice." Section 12 additionally provides that the rights of HSBC under the terms and conditions are cumulative.

Read together, these provisions gave HSBC the authority to freeze the accounts so as to protect itself from certain legal actions commenced in relation to the securities that it had held on plaintiffs' behalf. The bank was not required to give plaintiffs notice of these actions. Nor was it required to treat all its customers facing similar potential liability the same way. In opposition to HSBC's motion to dismiss, plaintiffs admitted that they were John Doe defendants in the legal actions that had been commenced. However, even if they were not defendants in those actions, plaintiffs clearly are within the class of beneficial owners of the securities from which the liquidator in those actions was expressly seeking to recover, and the terms and conditions authorized HSBC's actions even if plaintiffs' obligation to indemnify HSBC had not yet matured.

The cause of action for breach of the implied covenant of good faith and fair dealing must also be dismissed because "[t]he covenant of good faith and fair dealing cannot be construed so broadly as to effectively nullify other express terms of the contract, or to create independent contractual rights" (*National Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp.*, 25 AD3d 309, 310 [1st Dept 2006], *lv dismissed* 7 NY3d 886 [2006]).

Finally, the causes of action for breach of fiduciary duty, negligent misrepresentation, fraud, constructive fraud, and violation of General Business Law § 349 were properly dismissed as patently insufficient. As fully detailed above, HSBC's actions were fully authorized by the terms and conditions signed by plaintiffs, and HSBC was not required to give plaintiffs notice that it might enforce its rights thereunder. Concur—Sweeny, J.P., Renwick, Manzanet-Daniels and Gische, JJ.